NEW ENGLAND YACHT SALES, INC. *v.* COMMISSIONER
OF REVENUE SERVICES
(12606)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued January 7—decision released February 11, 1986

*J. Bruce Boisture,* with whom were *Kenneth E. Werner* and, on the brief, *William G. DeLana,* for the appellant (plaintiff).

*Jonathan L. Ensign,* assistant attorney general, with whom were *Frederick P. Clark,* tax attorney, and, on the brief, *Joseph I. Lieberman,* attorney general, and *Richard K. Greenberg,* assistant attorney general, for the appellee (defendant).

PETERS, C. J. In this case involving an assessment under the state sales tax; General Statutes § 12-408 (1);[1]

---

[1] General Statutes (Rev. to 1981) § 12-408 (1) provides: "Sec. 12-408. THE SALES TAX. (1) IMPOSITION AND RATE OF SALES TAX. For the privilege of making any sales as defined in subsection (2) of section 12-407, at retail, in this state for a consideration, a tax is hereby imposed on all retailers at the rate of seven and one-half per cent of the gross receipts of any retailer from the sale of all tangible personal property, except as hereinafter provided, sold at retail or, with respect to each transfer of occupancy, from the total amount of rent received for such occupancy, of any room or rooms in a hotel or lodging hosue for the first period of not exceeding thirty consecutive calendar days, and in lieu of said rate of seven and one-half per

the principal issue is the interpretation of the language of General Statutes § 12-407 (2)[2] that defines a "sale" as "[a]ny transfer of title . . . of tangible personal property." The plaintiff, New England Yacht Sales, Inc., brought this action against the defendant commissioner of revenue services to contest a sales tax assessment by the department of revenue services arising out of the plaintiff's sales of two yachts to nonresidents of the state of Connecticut. The trial court affirmed the validity of the assessment, and the plaintiff appeals. We find no error.

cent, at the rate of three and one-half per cent of the gross receipts of any retailer from the rendering of any service described in subdivision (i) of said subsection (2) of section 12-407. The rate of tax imposed by this chapter shall be applicable to all retail sales upon the effective date of such rate, except that a new rate shall not apply to any sales transaction wherein a binding sales contract without an escalator clause has been entered into prior to the effective date of the new rate and delivery is made within ninety days after the effective date of the new rate." ·

[2] General Statutes (Rev. to 1983) § 12-407 (2) provides: "DEFINITIONS. Whenever used in this chapter . . . (2) 'Sale' and 'selling' mean and include: (a) Any transfer of title, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration; (b) any withdrawal, except a withdrawal pursuant to a transaction in foreign or interstate commerce, of tangible personal property from the place where it is located for delivery to a point in this state for the purpose of the transfer of title, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, of the property for a consideration; (c) the producing, fabricating, processing, printing or imprinting of tangible personal property for a consideration for consumers who furnish either directly or indirectly the materials used in the producing, fabricating, processing, printing or imprinting, including but not limited to computer programming, sign construction, photofinishing, duplicating and photocopying; (d) the furnishing and distributing of tangible personal property for a consideration by social clubs and fraternal organizations to their members or others; (e) the furnishing, preparing, or serving for a consideration of food, meals or drinks; (f) a transaction whereby the possession of property is transferred but the seller retains the title as security for the payment of the price; (g) a transfer for a consideration of the title of tangible personal property which has been produced, fabricated or printed to the special order of the customer, or of any publication, including but not limited to computer programming, sign construction, photofinishing,

This case has been pursued, both in the trial court and on appeal, on a stipulation of facts that relates to the taxability of the sales that occurred, and not to the mathematical calculation of the assessment against the plaintiff. The relevant facts are that during 1980 the plaintiff, a Connecticut corporation doing business in Essex, entered into two transactions for the sale of yachts, one to Robert Pease, a resident of Rhode Island, and the other to Joan V Ltd., a Delaware corporation wholly owned by Morton R. Reisfeld, a resident first of New York and later of New Jersey. Each transaction was memorialized by two form contracts: a yacht

duplicating and photocopying; (h) a transfer for a consideration of the occupancy of any room or rooms in a hotel or lodging house for a period of thirty consecutive calendar days or less; (i) the rendering of certain services for a consideration, exclusive of such services rendered by an employee for his employer, as follows: (A) Computer and data processing services, including but not limited to time, (B) credit information and reporting services, (C) services by collection agencies, employment agencies and agencies providing personnel services, (D) commercial and industrial marketing, development, testing and research services, (E) private investigation, protection, patrol work, watchman and armored car services, (F) painting and lettering services, (G) interior design and decorating services, (H) telephone answering services, (I) stenographic services, (J) services to industrial, commercial or income-producing real property, including but not limited to such services as management, maintenance, janitorial, electrical, plumbing, painting, carpentry, landscaping and exterminating, and excluding any such services rendered with respect to the renovation of any such real property if the cost of such renovation is capitalized for federal income tax purposes, provided income-producing property shall not include property used exclusively for residential purposes in which the owner resides and which contains no more than three dwelling units, or a housing facility for low and moderate income families and persons owned by an organization which has as one of its purposes the ownership of housing for low and moderate income families, and which organization has been granted exemption from federal income taxation, (K) business analysis and management services, and (L) services providing 'piped-in' music to business or professional establishments; (j) the leasing or rental of tangible personal property of any kind whatsoever, including but not limited to motor vehicles, linen or towels, machinery or apparatus, office equipment and data processing equipment. Wherever in this chapter reference is made to the sale of tangible personal property or services, it shall be construed to include sales described in this subsection."

sales agreement and a marine bill of sale. Each yacht sales agreement described the parties, the yacht, the price, the payment terms, the delivery date and the seller's limited warranties of merchantability and fitness. Neither agreement contained any provision or agreement regarding passage of title to the yacht. Each marine bill of sale described the parties and the yacht, included a warranty of title by the seller, and further stated that the seller was, by its delivery, transferring all right, title and interest to the purchaser.[3]

The Pease yacht was sold in the following circumstances. On October 18, 1980, having received payment in full for the yacht, the plaintiff issued and delivered its marine bill of sale to the buyer, Pease. The yacht, although new, was not then in seaworthy condition, and the plaintiff undertook to furnish and install designated equipment in order to make the yacht safe and reliable. Over the winter of 1980-81, the plaintiff was expressly obligated to store the yacht, at its own expense, at an Essex boatyard. The plaintiff terminated its insurance coverage for the yacht on January 1, 1981, and delivered the yacht to Pease in Rhode Island on May 8, 1981. Pease has neither moored nor sailed the yacht in Connecticut, and has paid a Rhode Island use tax with respect to his use of the yacht.

The Reisfeld yacht was sold under similar circumstances. The plaintiff, after payment in full, issued its marine bill of sale to the buyer on December 20, 1980. Like the Pease yacht, the Reisfeld yacht needed to be

---

[3] The stipulation of the parties refers both to the yacht sales agreements and to the marine bills of sale executed and delivered by the plaintiff to the purchasers. Copies of the text of the yacht sales agreements, but not of the marine bills of sale, were attached to the stipulations. In the trial court, however, the parties' briefs, without objection, discussed the significance of both sets of papers, and the trial court's memorandum of decision indicates that it considered the terms of both sets of papers. We therefore consider the record, as did the trial court, to include the marine bills of sale as well as the yacht sales agreements.

made seaworthy, and was stored over the winter at the plaintiff's expense, albeit without an express agreement as to storage. On January 1, 1981, the plaintiff withdrew the yacht from its insurance coverage, and on May 1, 1981, the plaintiff delivered the yacht to Reisfeld in New York. The Reisfeld yacht has been neither moored nor sailed in Connecticut.

On appeal, the plaintiff has raised two claims of error. The plaintiff maintains that: (1) no Connecticut sales tax liability accrued for the sale of the yachts because no transfer of title occurred until delivery of the yachts to their respective purchasers outside of Connecticut; and (2) if Connecticut sales tax liability did accrue, the plaintiff should have received a credit in the amount of the use tax paid in Rhode Island. We are unpersuaded by either of these claims of error.

I

The plaintiff's principal claim is that the trial court failed to invoke the proper standard for determining when a sales tax may lawfully be imposed. A sales tax is levied by General Statutes § 12-408 (1) on "sales as defined in subsection (2) of section 12-407." The latter subsection defines "sale" and "selling" as "[a]ny transfer of title . . . of tangible personal property." The department of revenue services has not articulated a rule for determining when title passes for sales tax purposes. The trial court consulted both the title provision of the Uniform Commercial Code; General Statutes § 42a-2-401; and antecedent common law rules to find support for its conclusion that it should determine when title passed by looking to the intent of the parties. Relying on the terms of the contracts to purchase and the marine bills of sale, and on the exchange in this state of these papers for the payment of the purchase price, the court found that the sales had taken place in Connecticut because "the intent of the two buyers and of

the seller was in each instance that the title pass at the latest upon receipt of the Marine Bill of Sale."

The plaintiff argues that the trial court was in error both in its legal determination that the intent of the parties is the proper test for transfer of title and in its factual finding that these parties intended title to pass in Connecticut. We shall consider these two arguments separately.

In the absence of a statutory or regulatory clarification of what "transfer of title" means for sales tax purposes, the plaintiff urges us to rely on tests for the transfer of title that are set out in article 2 of the Uniform Commercial Code. This court, on a number of occasions, has looked to the Uniform Commercial Code as a fruitful source of analogy. See *Conference Center Ltd.* v. *TRC,* 189 Conn. 212, 225, 455 A.2d 857 (1983); *Hamm* v. *Taylor,* 180 Conn. 491, 494–95, 429 A.2d 946 (1980). Courts in other jurisdictions have interpolated the Uniform Commercial Code's provisions on transfer of title into the definitions contained in their sales tax statutes. *State* v. *Delta Air Lines, Inc.,* 356 So. 2d 1205, 1207 (Ala. Civ. App. 1978); *King* v. *State Board of Equalization,* 22 Cal. App. 3d 1006, 1012–13, 99 Cal. Rptr. 802 (1972); *O'Brien* v. *Isaacs,* 32 Ill. 2d 105, 107, 203 N.E.2d 890 (1965); *Crown Iron Works Co.* v. *Commissioner of Taxation,* 298 Minn. 213, 215–17, 214 N.W.2d 462 (1974); but see *Richards* v. *Blackmon,* 233 Ga. 739, 742, 213 S.E.2d 638 (1975); *Harbor Air Service, Inc.* v. *Board of Tax Appeals,* 88 Wash. 2d 359, 364–65, 560 P.2d 1145 (1977). It is therefore worth examining the relevant sections of the sales article of the code to see what illumination they shed on the problem before us.

The section of the Uniform Commercial Code to which the plaintiff directs our attention is § 42a-2-401.[4]

---

[4] General Statutes § 42a-2-401 provides: "Sec. 42a-2-401. PASSING OF TITLE; RESERVATION FOR SECURITY; LIMITED APPLICATION OF THIS SEC-

Three features of that section are particularly noteworthy. First, the section addresses title questions only as they relate to residual controversies between the immediate parties to the contract of sale. The section has only residual import because other sections in article 2 contain specific rules, "irrespective of title," regarding the rights, obligations and remedies of the seller and the buyer. Within its residual jurisdiction, the section deals with the rights of the parties themselves and

TION. Each provision of this article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. Insofar as situations are not covered by the other provisions of this article and matters concerning title become material the following rules apply:

"(1) Title to goods cannot pass under a contract for sale prior to their identification to the contract as provided by section 42a-2-501 and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this title. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of article 9, title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

"(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading (a) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but (b) if the contract requires delivery at destination, title passes on tender there.

"(3) Unless otherwise explicitly agreed where delivery is to be made without moving the goods, (a) if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; or (b) if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting.

"(4) A rejection or other refusal by the buyer to receive or retain the goods, whether or not justified, or a justified revocation of acceptance revests title to the goods in the seller. Such revesting occurs by operation of law and is not a 'sale.' "

not with the rights of third party purchasers or creditors. Compare General Statutes §§ 42a-2-402 and 42a-2-403. Since a tax collector is an involuntary creditor, rather than an immediate party to a contract of sale, the propriety of literal reliance on § 42a-2-401 in the context of tax assessments is arguable. Second, although § 42a-2-401 in some circumstances provides objective tests for the passage of title, the section's baseline principle is that, for identified goods such as are at issue here,[5] title passes from the seller to the buyer "in any manner and on any conditions explicitly agreed on by the parties." General Statutes § 42a-2-401 (1). Even the objective tests contained in § 42a-2-401 (2) and (3) apply only where the parties have not "otherwise explicitly agreed." Third, one objective test for the passage of title, applicable in the absence of explicit agreement to the contrary, is "the time and place at which the seller completes his performance with reference to the physical delivery of the goods." General Statutes § 42a-2-401 (2). The scope of the seller's duty of performance with respect to delivery, is, however, to be found in what the contract of sale requires or authorizes him to do in that regard. General Statutes § 42a-2-401 (2) (a) and (b).

Read carefully, therefore, § 42a-2-401 provides little support for the plaintiff's argument that the trial court in this case erred in looking to the intent of the parties, rather than to the postponed delivery of the yachts, in determining when title passed from the plaintiff to the purchasers. The trial court expressly found that neither the yacht sales agreements nor the marine bills of sale contained an express agreement between

---

[5] Title to goods cannot pass under a contract for sale before their identification; General Statutes § 42a-2-401 (1); but existing goods are presumptively identified as the goods to which the contract refers at the time the contract is made. General Statutes § 42a-2-501 (1) (a). The yachts sold by the plaintiff in this case were in existence and identified by serial number in the marine bills of sale.

the parties as to the place of delivery of either yacht. There is nothing in the stipulation of facts to demonstrate that the plaintiff's delivery of the yachts to the purchasers in May of 1981 was in fulfillment of its contract obligations of the previous fall. On this record, the plaintiff has failed to establish the factual predicate for its invocation of the code's objective test tying passage of title to completion of delivery arrangements. General Statutes § 42a-2-401 (2).[6]

In any case, however, whether as a counterpoint to the presumptive rule of § 42a-2-401 (2) or as a direct application of the basic rule of § 42a-2-401 (1), the determinative issue under the code is the explicit agreement of the parties concerning passage of title. "Section 2-401 (1) purports to allow the parties to control passage of title, *as between them,* by contract terms." (Emphasis in original.) White & Summers, Uniform Commercial Code (2d Ed. 1980) § 3-11, p. 139. The trial court's examination of the contractual arrangements between the parties for objective factual evidence of

---

[6] Although the parties stipulated that the plaintiff had physically delivered the yachts, in May of 1981, to their respective purchasers, the record is entirely silent about the contractual circumstances leading to these delivery arrangements.

Historically, the significance of contractual delivery arrangements for the determination of the passage of title depended in part upon whether the goods had been specifically identified at the time of the contract of sale. Compare Uniform Sales Act §§ 19 (5) with 19 (1). Official Comment 4 to § 42a-2-401 suggests that the common law distinction may still have some validity: "The factual situations in subsections (2) and (3) upon which passage of title turn actually base the test upon the time when the seller has finally committed himself in regard to specific goods. Thus in a 'shipment' contract he commits himself by the act of making the shipment. If shipment is not contemplated subsection (3) turns on the seller's final commitment, i.e. the delivery of documents or the making of the contract." Applying the rationale of this comment, the trial court could reasonably have concluded that the plaintiff in this case had fully committed himself to sale of the two yachts specifically described in the marine bills of sale at the time when the marine bills of sale were delivered to the purchasers.

their intent concerning passage of title was thus entirely consistent with the methodology of the Uniform Commercial Code.

Once it is established that the trial court applied a correct legal standard in upholding the challenged tax assessment, the only remaining question is whether the court's factual finding was clearly erroneous. Practice Book § 3060D; *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.,* 183 Conn. 266, 274–75, 439 A.2d 314 (1981); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). When it is remembered that the burden of proving an error in a deficiency assessment is on the plaintiff; *H. B. Sanson, Inc.* v. *Tax Commissioner,* 187 Conn. 581, 586, 447 A.2d 12 (1982); *Modugno* v. *Tax Commissioner,* 174 Conn. 419, 421, 389 A.2d 745 (1978); *Fusco-Amatruda Co.* v. *Tax Commissioner,* 168 Conn. 597, 599, 362 A.2d 847 (1975); that question is easily resolved. Although the parties stipulated that the yacht sales agreements contained no provision or agreement regarding passage of title to the yachts, the marine bills of sale did address that issue. Each marine bill of sale stated that the plaintiff "hereby transfers all of its right, title, and interest together with all gear, equipment, and necessaries appertaining and belonging to said vessel" to the respective purchaser. The plaintiff has offered no reason why this language should not be taken literally, to show that by its issuance title was intended to be transferred to the purchaser. Compare *Bowman* v. *American Home Assurance Co.,* 190 Neb. 810, 814, 213 N.W.2d 446 (1973). Although title verbiage in some specialized commercial engagements, such as documents of title and reservations of title; General Statutes § 42a-1-201 (15) and (37); is recognized to be an unreliable indicator of the passage of title for the purposes of § 42a-2-401, the parties have not suggested that there exists a similar commercial usage with

regard to marine bills of sale. That the parties did explicitly agree that title was to pass upon the transfer of the marine bills of sale is reenforced, furthermore, by the remaining arrangements between them. Had the plaintiff continued to own the Pease yacht after October, it would have been superfluous to have a provision in the yacht sales agreement expressly requiring the plaintiff, at its own expense, to arrange for winter storage of the yacht. A similar agreement was implied with respect to the Reisfeld yacht. If the plaintiff had retained full ownership of the yachts, it is not likely that it would have withdrawn them from its insurance coverage. The fact that the plaintiff contracted to make the yachts seaworthy had no necessary bearing either on their identification to the contract or on the passage of title. See General Statutes § 42a-2-501, Official Comment 4. Finally, while identification of the goods to the contract is essential to the passage of title under § 42a-2-201, delivery to the purchaser is not. *Tatum* v. *Richter*, 280 Md. 332, 336–37, 373 A.2d 923 (1977); *Holstein* v. *Greenwich Yacht Sales, Inc.*, 122 R.I. 211, 216, 404 A.2d 842 (1979). We have no basis, on this record, for overturning the trial court's determination that the transfer of title to these two yachts occurred in this state.

It may be useful to add that, on a different factual record, the principles embodied in § 42a-2-401 of the Uniform Commercial Code may well serve as a useful factual referent for determining the time and place at which the parties to a sales contract intended to transfer title from the seller to the buyer. A seller's delivery obligations may, for example, be established by the express terms of an agreement or by an applicable course of dealing or usage of trade. See General Statutes § 42a-1-205. A more complete factual record may shed further light on the meaning attached by the parties to the language of the papers they exchanged. See

General Statutes § 42a-2-202. On the record presently before us, however, the trial court could properly find that the plaintiff in this case had transferred title to these two yachts in Connecticut and was therefore properly assessed for Connecticut sales tax with regard to these sales.

## II

The plaintiff's alternate argument is that, if sales tax liability was properly assessed, it is entitled to a credit, under General Statutes § 12-430 (5), for the use tax paid on the Pease yacht in Rhode Island. Both our statutes and that of Rhode Island provide exemptions for sales and use taxes on articles of tangible personal property already taxed in another state. See R.I. Gen. Laws § 44-18-30A (1980). To avoid unwarranted double taxation, the plaintiff claims it should be entitled to pro rata equitable relief in accordance with General Statutes § 12-422.

The plaintiff's claim is difficult to square with the language of § 12-430 (5).[7] That statute provides a credit in the event that "any service or article of tangible personal property *has already been subjected to a sales or use tax by any other state . . . and payment made thereon . . . .*" (Emphasis added.) Since the plaintiff's liability for sales tax in this state was antecedent to the purchaser's payment of use tax in Rhode Island, the plaintiff can succeed only if we give retroactive

---

[7] General Statutes § 12-430 (5) provides: "MISCELLANEOUS PROVISIONS. . . . (5) PAYMENT OF SALES OR USE TAX TO ANOTHER STATE. If any service or article of tangible personal property has already been subjected to a sales or use tax by any other state or political subdivision thereof and payment made thereon in respect to its sale or use in an amount less than the tax imposed by this chapter, the provisions of this chapter shall apply, but at a rate measured by the difference, only, between the rate herein fixed and the rate by which the previous tax upon the sale or use was computed. If such tax imposed in such other state or political subdivision thereof is equivalent to or in excess of the rate imposed under this chapter at the time of such sale or use, then no tax shall be due on such article."

effect to the Rhode Island payment. Such retroactive effect would be inconsistent with the general rule that statutory exemptions are a matter of legislative grace and are thus strictly construed against the taxpayer. *The B. F. Goodrich Co.* v. *Dubno,* 196 Conn. 1, 8–9, 490 A.2d 991 (1985); *Yaeger* v. *Dubno,* 188 Conn. 206, 212, 449 A.2d 144 (1982). As in *Connecticut Theater Foundation, Inc.* v. *Brown,* 179 Conn. 672, 677, 427 A.2d 863 (1980), the plaintiff cannot rely on an exemption that did not yet exist when its tax obligation became due.

Apparently recognizing that § 12-430 (5) poses serious obstacles to its claim for a credit, the plaintiff relies on § 12-422,[8] which allows the Superior Court to grant aggrieved taxpayers "such relief as may be equitable." That statute permits the Superior Court to review assessments of interest and of penalties; *H. B. Sanson, Inc.* v. *Tax Commissioner,* supra, 586–88; but such

---

[8] General Statutes § 12-422 provides: "Sec. 12-422. APPEAL. Any taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services under section 12-418, 12-421 or 12-425 may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain, which shall be accompanied by a citation to the comissioner of revenue services to appear before said court. Such citation shall be signed by the same authority, and such appeal shall be returnable at the same time and served and returned in the same manner, as is required in case of a summons in a civil action. The authority issuing the citation shall take from the appellant a bond or recognizance to the state of Connecticut, with surety to prosecute the appeal to effect and to comply with the orders and decrees of the court in the premises. Such appeals shall be preferred cases, to be heard, unless cause appears to the contrary, at the first session, by the court or by a committee appointed by it. Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the treasurer to pay the amount of such relief, with interest at the rate of six per cent per annum, to the aggrieved taxpayer. If the appeal has been taken without probable cause, the court may tax double or triple costs, as the case demands; and, upon all such appeals which are denied, costs may be taxed against the appellant at the discretion of the court, but no costs shall be taxed against the state."

relief was afforded in this case when the trial court expressly declined to assess any penalty on either of the plaintiff's yacht sales. We are unpersuaded that this plaintiff is entitled to further equitable consideration for taxes paid by a different taxpayer for that taxpayer's use, in a different state, of a yacht formerly owned by this plaintiff.[9]

There is no error.

In this opinion the other judges concurred.

---

[9] We express no opinion about the extent to which either of the two purchasers is now obligated to reimburse the plaintiff for the sales tax attributable to these transactions.