# OUTDOOR DEVELOPMENT CORPORATION *v.* TOM MIHALOV, SR.
## (AC 19183)

Schaller, Zarella and Peters, Js.

Argued June 6—officially released August 1, 2000

*William J. Wenzel*, with whom, on the brief, was *Sheila A. Denton*, for the appellant (plaintiff).

*Dion Moore* and *Alan Neigher*, with whom was *Ann Marie Willinger*, for the appellees (defendants).

*Opinion*

PETERS, J. This appeal arises out of a landowner's repudiation of a lease permitting the tenant to construct and maintain an outdoor advertising sign on the landowner's property. It is no longer contested that the repudiation was a breach of the lease. The principal issue before us is whether the trial court properly determined the amount of lost profits that the breach entitled the tenant to recover from the landlord.

The plaintiff, Outdoor Development Corporation, brought a multicount action against the defendants, Tom Mihalov, Sr. (Mihalov), and Murphy, Inc. (Murphy), in which the plaintiff sought recovery for Mihalov's repudiation of a ten year lease[1] authorizing the plaintiff to construct a billboard at 1945 State Street Extension in Bridgeport.[2] The plaintiff also sought recovery from Murphy, which had been the tenant immediately antecedent to the plaintiff's lease and which allegedly had persuaded Mihalov to repudiate the plaintiff's lease.

---

[1] The lease gave the plaintiff the option to renew it for another ten year term.

[2] The plaintiff alleged that Mihalov wrongfully had terminated the lease agreement and that this conduct not only was a breach of contract but also a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.

The counts against Murphy charged it with tortious interference with Mihalov's lease of his property to the plaintiff.[3] Murphy filed a counterclaim against the plaintiff claiming that the plaintiff tortiously had interfered with Murphy's contract with Mihalov.

The parties agreed to a court trial and stipulated that the trial should be bifurcated, with separate hearings on the issues of liability and of damages. At the end of the hearing on liability, the court concluded that the plaintiff had proven only counts one and two of its complaint, in which it sought damages from Mihalov for breach of contract.[4] It further concluded that Murphy had not proven its counterclaim. At the end of the hearing in damages, in which the plaintiff sought to recover its out-of-pocket expenses[5] and future lost profits, the court ordered Mihalov to pay damages only for the plaintiff's lost profits. It found that these damages amounted to $29,500.

The plaintiff's appeal raises three issues. According to the plaintiff, the court improperly (1) calculated lost profits, (2) excluded the plaintiff's documentary rebuttal evidence and (3) permitted Murphy, after its exoneration in the liability phase of the hearing, to present evidence in the damages phase. We are not persuaded by any of the plaintiff's claims.

## I

## LOST PROFITS

We review the plaintiff's challenge to the court's award of damages in accordance with well established

---

[3] The plaintiff alleged that Murphy had tortiously interfered with the plaintiff's contract with Mihalov and that such conduct violated the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.

[4] No appeal has been taken from the court's judgment with respect to liability.

[5] The court rejected the plaintiff's claim for recovery of its out-of-pocket expenses on the ground that the plaintiff had failed to establish that it, rather than a related corporate entity, had paid the expenses. The plaintiff has not appealed from the denial of these expenses.

standards. "[W]e undertake a two-part analysis. First, we ascertain whether the trial court's underlying factual findings were clearly erroneous. *State* v. *Torres*, 197 Conn. 620, 625, 500 A.2d 1299 (1985); *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221, 435 A.2d 24 (1980). . . . Second, in light of the facts found by the trial court, we determine whether the [trial court] was correct in [its legal conclusions]. . . . The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts." (Internal quotation marks omitted.) *State* v. *Donahue*, 251 Conn. 636, 642, 742 A.2d 775 (1999).

The plaintiff asks us to reverse the court's finding of damages on two grounds. First, the plaintiff asserts that the court's assessment of its annual future lost profits was based on an improper legal standard. Second, the plaintiff claims that the court should have awarded it damages for more than five years. We disagree.

A

Calculation of Annual Lost Profits

The plaintiff sought damages for its lost profits on the theory that its damages ought to reflect the proposition that the breach of its lease deprived it of the opportunity to earn profits without regard to fixed costs. Analogizing to the provisions of General Statutes § 42a-2-708; see *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.*, 183 Conn. 266, 277–78, 439 A.2d 314 (1981);[6] the

---

[6] On numerous occasions, our Supreme Court has "drawn upon provisions of the Uniform Commercial Code as a source of analogy for the emergent common law. See, e.g., *New England Savings Bank* v. *Lopez*, 227 Conn. 270, 281–82, 630 A.2d 1010 (1993) (real property); *Hospital of St. Raphael* v. *New Haven Savings Bank*, [205 Conn. 604, 610–11, 534 A.2d 1189 (1987)] (passbook savings account); *Barco Auto Leasing Corp.* v. *House*, 202 Conn. 106, 114, 520 A.2d 162 (1987) (automobile leasing agreement); *New England Yacht Sales, Inc.* v. *Commissioner of Revenue Services*, 198 Conn. 624, 630, 504 A.2d 506 (1986) (transfer of title of personal property); *Olean* v. *Treglia*, 190 Conn. 756, 762, 463 A.2d 242 (1983) (real property); *Conference Center Ltd.* v. *TRC*, 189 Conn. 212, 225, 455 A.2d 857 (1983) (real property)." *Nor-*

plaintiff maintained that its damages should have included a recovery for overhead or should have excluded any calculation of its fixed costs. That principle was applicable, according to the plaintiff, because, over all, the fixed costs attributable to its billboard business would not have been increased by its performance of the Mihalov lease. The plaintiff argues that the court improperly assessed its damages by accepting an analysis that deducted fixed costs from the profits that, but for Mihalov's breach, the plaintiff could have been expected to earn. The plaintiff continues to press this argument on appeal.

Under the circumstances of this case, the plaintiff's argument founders not on a principle of law but on the lack of factual support. To prevail, the plaintiff was required to provide to the court credible evidence quantifying the amount of damages that, on its theory, it would be entitled to recover. The court found that the plaintiff had failed to do so.

The plaintiff presented its evidence on damages through the testimony of Bruce A. Barrett. On the basis of that testimony, the court found that the plaintiff corporation is one of several entities owned by members of the Barrett family. Since 1963, Barrett Outdoor Communications, Inc., has been engaged in the business of outdoor billboard advertising. In 1992, the Barretts decided that Barrett Outdoor Communications, Inc., would continue to build and manage the billboards and that the plaintiff would be incorporated separately to find suitable real estate and to make suitable arrangements with those owning the sites. The two companies continued, however, to operate as one integrated family business that organized its finances so as to provide income to members of the family. For example, in 1995,

*mand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 501, 646 A.2d 1289 (1994).

the plaintiff, organized as a subchapter S corporation, paid substantial salaries to its officers at the same time that the corporation reported an overall loss to the Internal Revenue Service.[7] For similar family reasons, the plaintiff paid substantial management fees to Barrett Outdoor Communications, Inc.

Because of this family oriented corporate structure, the court expressed serious reservations about the weight of the evidence offered by Barrett.[8] The weight to be given to Barrett's testimony was further diminished by the fact that, as he acknowledged, he had no training in accounting principles and had based his analysis of the plaintiff's lost profits on a calculation that did not conform to generally accepted accounting principles.[9]

On this record, the court determined that "the better and weightier evidence on the issue of damages" was the evidence offered by Ray LaLuna, Murphy's expert,[10]

[7] A subchapter S corporation is a flow through entity. All of the earnings of such a company must be reported as individual income by its stockholders. The corporation files federal tax returns only for informational purposes. See *Ruscito* v. *F-Dyne Electronics Co.*, 177 Conn. 149, 162, 411 A.2d 1371 (1979); *Davenport* v. *Quinn*, 53 Conn. App. 282, 296, 730 A.2d 1184 (1999).

[8] As far as we can tell, the plaintiff does not, on appeal, challenge the court's assessment of the probative value of Barrett's testimony.

[9] The plaintiff argues that the court placed on it too heavy an evidentiary burden to prove its damages with reasonable certainty. The plaintiff asserts that the court mistakenly relied too heavily on the strictures articulated in *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 65–67, 717 A.2d 724 (1998). This criticism of the court is not supported by the court's findings. Although it is arguable that the court mistakenly found that the plaintiff was a new business, it nonetheless concluded that the plaintiff had established the likelihood of future profits with sufficient reasonable certainty to satisfy the test of *Beverly Hills Concepts, Inc.* Unlike the new business whose lost profits were at issue in *Beverly Hills Concepts, Inc.*, the plaintiff's business in this case had not been entirely unprofitable throughout its corporate existence. See id., 63.

[10] Although the plaintiff implies that it was prejudiced by the alleged failure to disclose the name of Murphy's expert witness in a timely fashion, it has not briefed any such issue on appeal.

on behalf of Mihalov. LaLuna deducted from the profits that the plaintiff likely would have realized the expenses that, in his view, the plaintiff would have incurred. He based his figures on profits and expenses actually incurred by Murphy in its use of the Mihalov property. His analysis of net profits did not differentiate between fixed costs and direct costs. Whether or not this analysis was analytically correct, the plaintiff never offered persuasive evidence to the court, either in its case-in-chief or on cross-examination, to establish the specific amount of fixed costs that, in its view, should have been added back to arrive at a figure that would have made the plaintiff whole. Even now, on appeal, the plaintiff's brief does not close this evidentiary lacuna.

It was the plaintiff's burden to establish the amount of its damages, and it failed to do so. If the court had rejected the Murphy figures as insufficiently probative, the court would have been hard put to find an evidentiary foundation for any award of damages. In light of the probative evidence before the court, we are persuaded that it properly assessed the damages to which the plaintiff was entitled to an annual amount of $5900 per year.

## B

### The Duration of the Annual Award

The court found that, despite the ten year term of the lease, the plaintiff was entitled to recover damages only for five years. It reasoned that any further award would be too speculative in light of "the competitive nature of the industry, the ongoing uncertainty regarding [Mihalov's] continued ownership of the real estate, and the disputes about zoning and permit issues." The plaintiff argues that it should have been allowed recovery at least for the ten year initial term of its lease of the Mihalov property. We disagree.

The plaintiff's contention in this regard is encumbered by the same difficulties as his argument with respect to the base figure of $5900 per year. The court's conclusion was based on findings of fact. Although the plaintiff disputes the inferences that the court drew from the evidence presented on behalf of Mihalov, we are not persuaded that the findings of fact were clearly erroneous. See *State* v. *Donahue*, supra, 251 Conn. 642. We conclude that the judgment of the trial court on this issue must be affirmed.

II

EXCLUSION OF DOCUMENTARY EVIDENCE
OFFERED ON REBUTTAL

At the conclusion of the evidence presented on behalf of Mihalov, the plaintiff, in rebuttal, attempted to recall Barrett to introduce further documentary evidence in support of its claimed right to recover lost profits. The proposed evidence would have reconfigured the LaLuna evidence presented by Murphy in light of the method of analysis proposed by Barrett in his testimony in chief. The plaintiff argues that the court improperly excluded the plaintiff's evidentiary proffer. We disagree.

The court held that the proffered rebuttal evidence should be excluded for two reasons. First, it found that, because of Barrett's limited qualifications to formulate financial analyses, the plaintiff had not demonstrated a proper basis for the admissibility of the evidence. Second, it found that the proffer was not true rebuttal because the plaintiff could have introduced the evidence earlier, either in its own presentation or in cross-examination of the expert evidence offered by LaLuna on behalf of Mihalov. In the latter regard, the court noted expressly that, once the plaintiff had access to the underlying financial data, the plaintiff should and

could have anticipated the contents of that expert evidence.[11]

The admission of rebuttal evidence ordinarily is within the sound discretion of the trial court. In considering whether a trial court has abused its discretion, appellate courts view such a trial court ruling by making every reasonable presumption in favor of the decision of the trial court. *State* v. *Canty*, 223 Conn. 703, 715–16, 613 A.2d 1287 (1992); *State* v. *Cepeda*, 51 Conn. App. 409, 439, 723 A.2d 331, cert. denied, 248 Conn. 912, 732 A.2d 180 (1999).

We are persuaded that the plaintiff has failed to demonstrate an abuse of discretion by the trial court in this case. The court repeatedly expressed its doubts about the probative value of Barrett's testimony. Assessment of the weight to be given to conflicting evidence was a judgment call that the trial court was entitled to make. *D'Angelo* v. *McGoldrick*, 239 Conn. 356, 365, 685 A.2d 319 (1996); *Temple* v. *Meyer*, 208 Conn. 404, 407, 544 A.2d 629 (1988). Similarly, the trial court was in a better position than is this court to assess the plaintiff's ability, earlier in the trial, to have presented the evidence belatedly offered on rebuttal. Accordingly, we affirm the court's exclusion of the plaintiff's rebuttal evidence.

## III

### FAILURE TO PRECLUDE EVIDENTIARY PRESENTATION BY MURPHY

At the end of the liability phase of this bifurcated trial, the court exonerated Murphy from any legal responsibility for the injury caused to the plaintiff by Mihalov's breach of contract.

---

[11] At the hearing on the proffer of surrebuttal evidence, the plaintiff's counsel conceded that the financial documents on which LaLuna relied had been available to the plaintiff during the presentation of its case-in-chief.

Nonetheless, over the plaintiff's objection, the court permitted Murphy to participate in the damages phase of the trial and to offer evidence of damages through the expert witness, LaLuna.

The court overruled the plaintiff's objection for two reasons. It found that Murphy's participation would not prejudice the rights of the plaintiff and that such participation was justified by Murphy's possible liability under an indemnification agreement between it and Mihalov.[12]

On appeal, the plaintiff renews his objection to Murphy's participation. It is hornbook law that appellate courts do not undertake plenary review of challenges to a trial court's evidentiary rulings. "[T]he trial court has broad discretion in ruling on the admissibility of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Sullivan*, 244 Conn. 640, 646, 712 A.2d 919 (1998); *State* v. *Coleman*, 241 Conn. 784, 789, 699 A.2d 91 (1997); *Potter* v. *Chicago Pneumatic Tool Co.*, 241 Conn. 199, 259, 694 A.2d 1319 (1997). This standard of review applies not only to evidentiary rulings about particular evidentiary proffers but also to rulings about the qualifications of the person through whom the evidentiary proffer is made. *State* v. *McClendon*, 248 Conn. 572, 585–86, 730 A.2d 1107 (1999) (qualifications of expert witness); *State* v. *Kemp*, 199 Conn. 473, 476, 507 A.2d 1387 (1986) (same).

The plaintiff has failed to demonstrate any abuse of discretion in the court's ruling permitting Murphy to participate in the hearing on damages. Significantly, the plaintiff's objection targets only the auspices under which LaLuna's testimony was offered. It does not chal-

---

[12] Elsewhere during the trial, the court noted that the bifurcation of the trial was for the convenience of the court and that it was not a "formal" bifurcation.

lenge the admissibility of LaLuna's testimony had he been called by Mihalov and thus makes no argument to refute the court's finding of lack of prejudice. It does not deny the existence of an indemnification agreement between Mihalov and Murphy.

We conclude that the court did not abuse its discretion in allowing Murphy to participate in the hearing on damages. On the record before it, the court properly rejected the arguments of the plaintiff to the contrary.

The judgment is affirmed.

In this opinion the other judges concurred.