MICHELE BISHOP *v.* MICHAEL FREITAS
(AC 25438)

Flynn, Bishop and Harper, Js.

Submitted on briefs April 28—officially released August 2, 2005

*Steven H. St. Clair* filed a brief for the appellant (plaintiff).

*David E. Kamins* filed a brief for the appellee (defendant).

*Opinion*

HARPER, J. The plaintiff, Michele Bishop, appeals from the judgment of the trial court granting her motion to modify child support to be paid by the defendant, Michael Freitas. The plaintiff claims that the court improperly determined the defendant's income for the purposes of calculating child support payments by omitting certain income and deductions relating to the subchapter S corporation of which the defendant is the president and sole shareholder. Specifically, the plaintiff claims that the court failed to assess as income (1) the defendant's subchapter S depreciation adjustment and (2) a reported payment on a loan made by the corporation to the defendant. We affirm the judgment of the trial court.

The following undisputed facts are relevant to our disposition of the plaintiff's appeal. The parties, who have never been married to one another, are the parents of a minor child born on May 4, 1994. The defendant is the president and sole shareholder of A&M Towing & Recovery, Inc., a subchapter S corporation that operates an automobile towing business. On February 5, 1997, the court rendered judgment in accordance with the stipulation of the parties, in which the defendant acknowledged that he is the biological father of the minor child. The judgment provided that the plaintiff and the defendant would have joint custody of the minor

child and that the minor child would reside principally with the plaintiff. The judgment further provided that when day care expenses no longer are incurred, the defendant would pay to the plaintiff child support weekly in accordance with the child support guidelines. It further provided that if the parties could not agree on the amount of such payments, the parties would return to the court by motion, and the court would set an appropriate weekly payment amount. On January 30, 2001, the plaintiff filed a motion to open and to modify the judgment to allow the court to establish the weekly child support payments.

The court ordered discovery and then held a hearing on October 9 and November 21, 2001. The court found that the defendant's gross income for the calendar year 2000 amounted to $78,100, consisting of compensation reported on his form W-2 in the amount of $48,800, subchapter S net income in the amount of $10,757, subchapter S depreciation adjustment in the amount of $18,476 and subchapter S nondeductible expenses in the amount of $67. The court further found that in determining the defendant's net income for calculating child support for the calendar year 2000, the defendant shall only deduct applicable social security, medicare and state income taxes. Additionally, the court ordered the parties to submit calculations for child support in the calendar years 2000 and 2001 on the basis of its finding.

The plaintiff appealed, claiming that the court improperly calculated the defendant's gross income pursuant to his subchapter S tax return for the purposes of determining child support. On January 6, 2004, this court dismissed the appeal because the record did not contain an order that the court granted the plaintiff's motion to open the judgment and, therefore, there was no final judgment from which the plaintiff could appeal.

See *Bishop* v. *Freitas*, 80 Conn. App. 790, 837 A.2d 848 (2004).

On March 5, 2004, the court granted the plaintiff's motion to reopen and to modify the judgment as to child support. The court rendered judgment ordering the defendant to pay the plaintiff $259 per week as child support.[1] The court further ordered that the difference between the child support ordered and the support actually paid shall constitute an arrearage that the defendant shall pay to the plaintiff at the rate of 20 percent of the order then in place ($52), which shall be added to the order then in place to make a total support payment of $311 per week. The plaintiff's appeal followed. Additional facts will be set forth as necessary.

"As has been repeatedly stated by this court, judicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . Our function in reviewing such discretionary decisions is to determine whether the decision of the trial court was clearly erroneous in view of the evidence and pleadings in the whole record. . . . . With respect to the financial awards in a [custody matter], great weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence. . . . For that reason, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action." (Citations omitted; internal quotation marks omitted.) *Brent* v. *Lebowitz*, 67 Conn. App. 527, 529–30, 787 A.2d 621, cert. granted on other grounds,

---

[1] Additionally, the court ordered the defendant to pay to the plaintiff 70 percent of unreimbursed medical expenses per year after deducting the first $100 per child, which is to be paid by the plaintiff, and 70 percent of any qualifying day care expenses. The court allowed the defendant to receive credit for any child support payments made previously.

260 Conn. 902, 793 A.2d 1087 (2002) (appeal withdrawn April 25, 2002).

I

The plaintiff first claims that the court, in determining child support, improperly excluded from the defendant's net income certain depreciation expenses revealed on the tax returns of A&M Towing & Recovery, Inc. After reviewing the record, we conclude that it was not improper for the court to exclude the depreciation expense from the defendant's net income.

The guidelines utilized to determine child support payments are set forth in § 46b-215a-1 et seq. of the Regulations of Connecticut State Agencies. "The guidelines are predicated upon the concept that children should receive the same proportion of parental income that they would have received had the family remained intact. Child Support and Arrearage Guidelines, Preamble, § (c), pp. ii-iii. Toward that end, the guidelines are income driven, rather than expense driven. At each income level, the guidelines allocate a certain percentage of parental income to child support. The percentage allocations contained in the guidelines aim to reflect the average proportions of income spent on children in households of various income and family sizes, and contain a built-in self-support reserve for the obligor. Id., §§ (c) and (d), pp. ii-iii. The result is that the guidelines incorporate an allocation of resources between parents and children that the legislature has decided is the appropriate allocation. Consequently, our interpretation of the guidelines must seek to preserve this allocation." *Unkelbach* v. *McNary*, 244 Conn. 350, 357–58, 710 A.2d 717 (1998).[2]

---

[2] The guidelines are preceded by a preamble that "is intended to assist users of the child support and arrearage guidelines but is not part of the official regulations." Child Support and Arrearage Guidelines, Preamble, § (a), p. i.

"It is well settled that a court must utilize net income of the parties, not gross income, to determine the amount of child support payments. . . . According to § 46b-215a-1 (17) of the Regulations of Connecticut State Agencies, net income is gross income minus allowable deductions." (Citation omitted; internal quotation marks omitted.) *Lefebvre* v. *Lefebvre,* 75 Conn. App. 662, 666, 817 A.2d 750, cert. denied, 263 Conn. 921, 822 A.2d 243 (2003). Section 46b-215a-1 (1) of the Regulations of Connecticut State Agencies provides in relevant part that "[a]llowable deductions means average weekly amounts subtracted from gross income to arrive at net income, and are limited to the following: (A) federal, state, and local income taxes, based upon all allowable exemptions, deductions and credits . . . ."

Because A&M Towing & Recovery, Inc., is organized as a subchapter S corporation, all of its capital gains and losses, for federal income tax purposes, pass through A&M Towing & Recovery, Inc., to the individual shareholders, and any federal income tax liability on capital gains is the responsibility of the individual shareholder. See *Ruscito* v. *F-Dyne Electronics Co.,* 177 Conn. 149, 162, 411 A.2d 1371 (1979); *Outdoor Development Corp.* v. *Mihalov,* 59 Conn. App. 175, 180 n.7, 756 A.2d 293 (2000); *Davenport* v. *Quinn,* 53 Conn. App. 282, 296, 730 A.2d 1184 (1999). "All of the earnings of such a company must be reported as individual income by its [shareholders]." *Outdoor Development Corp.* v. *Mihalov,* supra, 180 n.7.[3]

The plaintiff claims that the court improperly included a portion of the depreciation expense relating to the defendant's interest in A&M Towing & Recovery, Inc., in calculating the defendant's net income for use

[3] Although a subchapter S corporation does not pay federal income taxes, it still must file a federal income tax return reflecting any capital gain or loss and a schedule K-1 for each shareholder reflecting the amount of gain or loss passed on to each shareholder.

in determining the child support payments. The court allowed the defendant to claim a portion of the depreciation in calculating his adjusted gross income on his federal tax return, but also included a portion of the originally expensed amount in its calculation of his net income. The depreciation expense at issue relates to business equipment, specifically the tow trucks used in the business. The court considered testimony regarding the nature of the depreciation and specifically considered whether the depreciation constituted income or whether it was reinvested into the business. The court heard further testimony that the depreciation claimed by the defendant did not translate to cash that would be available to him on a weekly basis.

This court will not change the orders of the trial court on the basis of the plaintiff's unsupported allegations. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented." (Internal quotation marks omitted.) *Smith* v. *Smith*, 249 Conn. 265, 282–83, 752 A.2d 1023 (1999). We conclude that the court did not abuse its discretion in calculating the defendant's net income because the court's calculation was correct in law and supported by the evidence. Accordingly, the plaintiff's claim fails.

## II

The plaintiff next claims that the court improperly excluded a loan payment from A&M Towing & Recovery, Inc., to the defendant when calculating his net income for the purpose of determining child support. We do not agree.

The plaintiff argues that the defendant elected to pay himself the sum of $25,747,[4] which she characterizes

[4] In their briefs, the parties both state that the amount of the payment on the loan from the shareholder was $25,747; however, the record indicates that the loan payment was actually $25,847.

as a payment on a loan from a shareholder. Our review of the transcript indicates that this issue was explored by the court during the October 9, 2001 hearing during which the court heard testimony from the plaintiff's expert, a tax attorney. The expert testified that "[d]uring the year 2000, the corporation paid to a shareholder $25,847 in a return of capital. There was a loan from a shareholder booked at the beginning of the year and a $25,847 reduction in the balance at the end of the year. There is only one shareholder in the corporation, and so it would appear that that was [the defendant]. So . . . it's necessary to add $25,847 to [the defendant's net taxable income indicated on his tax return] to represent . . . distributions made to [the defendant], which were not taxable and, therefore, don't appear in the net taxable income lines on his tax return."

The court also heard testimony from the defendant's accountant, who rebutted the characterization of the loan repayment as income. The defendant's accountant testified that the "loan repayment, while it does represent cash paid to [the defendant], is a loan repayment. It is not income." To this the court replied, "I understand that."

"The acceptance or rejection of the opinions of expert witnesses is a matter peculiarly within the province of the trier of fact and its determinations will be accorded great deference by this court. . . . In its consideration of the testimony of an expert witness, the trial court might weigh, as it sees fit, the expert's expertise, his opportunity to observe the defendant and to form an opinion, and his thoroughness. It might consider also the reasonableness of his judgments about the underlying facts and of the conclusions which he drew from them. . . . It is well settled that the trier of fact can disbelieve any or all of the evidence proffered . . . ." (Citation omitted; internal quotation marks omitted.)

*Evans* v. *Taylor*, 67 Conn. App. 108, 113, 786 A.2d 525 (2001).

Accordingly, we conclude that it was well within the discretion of the court to weigh the credibility of the testimony presented and that the court did not abuse its discretion in excluding the loan from the calculation of the defendant's net income for the purposes of determining child support. Therefore, the plaintiff's second claim also fails.

The judgment is affirmed.

In this opinion the other judges concurred.