******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## JENNIFER M. YANAVICH *v.* JOSEPH YANAVICH
### (AC 46656)

Elgo, Seeley and Bishop, Js.

*Syllabus*

The defendant appealed from the trial court's denial of his motion to modify alimony and child support and its grant of his motion for contempt, claiming, inter alia, that the court improperly failed to impose sanctions on the plaintiff after finding her in contempt for violating the terms of the dissolution judgment. *Held*:

The trial court properly denied the defendant's motion to modify alimony and child support, as its finding that the distributions the defendant took from the retained earnings of the S corporation in which he was the sole shareholder constituted income for purposes of his alimony and child support obligations was not clearly erroneous, and it correctly determined that there had been no substantial change in circumstances to warrant a modification.

The trial court did not abuse its discretion when it failed to impose sanctions on the plaintiff for her contemptuous behavior because its remedial response was well within the scope of its discretionary authority.

Argued May 23—officially released October 8, 2024

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Litchfield, where the court, *Bentivegna, J.*, rendered judgment dissolving the parties' marriage and granting certain other relief in accordance with a settlement agreement; thereafter, the court, *Lobo, J.*, granted in part the defendant's motions for contempt and for modification of alimony and child support and rendered judgment thereon, from which the defendant appealed to this court. *Affirmed.*

*Steven H. Levy*, for the appellant (defendant).

*Opinion*

BISHOP, J. The defendant, Joseph Yanavich, has presented two issues for our review in this postmarital

dissolution appeal. First, he claims that the trial court improperly denied his motion to modify alimony and child support. Second, he claims that the court improperly failed to impose sanctions on the plaintiff, his former wife, Jennifer M. Yanavich,[1] after finding her in contempt for violating the terms of the dissolution judgment. More specifically, as to his first claim, he seeks our determination as to whether the retained earnings of a subchapter S corporation derived from past years' earnings and distributed to its sole shareholder in a later year or years can be considered present income to the shareholder for purposes of setting his or her alimony and child support obligations. As to his second claim, he argues that the court abused its discretion by not imposing sanctions on the plaintiff after finding that she wilfully failed to prevent the minor children from being inappropriately exposed to the parties' disputes over financial issues in violation of the explicit terms of their marital separation agreement. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are pertinent to our resolution of the issues presented. The parties' marriage was dissolved on May 30, 2018, with orders based on their "separation and property settlement agreement" (agreement). At that time, the parties' seven children ranged in age from nineteen to three. The agreement required the defendant to pay the plaintiff the sum of $14,585 per month as alimony for a period of twelve years with the normal caveats regarding modifiability and termination upon death or remarriage. Additionally, the agreement required the defendant to pay the sum of $6250 per month as child support. The aggregate total of the defendant's alimony and child support obligation was, therefore, approximately $250,000 per year.

---

[1] The record reflects filings by the plaintiff in which she also refers to herself as "Jennifer Codey, f/k/a Jennifer Yanavich."

The agreement also included several provisions regarding the postdissolution care of the children. The parties agreed to share joint legal custody of the children, who would reside primarily with the plaintiff. There was also a fulsome access schedule and detailed language about the parties' parenting responsibilities. Notably, section 6.1 (c) of the agreement stated in relevant part: "Neither parent will engage in any conversation with the minor children concerning the other parent as to any disputes as between the parents existing in the past, present or future, specifically including financial matters. Neither parent will make any disparaging remark about the other parent to the minor children, in the presence of the minor children or in a circumstance in which the minor children can reasonably be expected to overhear such remarks, including the parents' telephone calls made while a child is under the care of the parent. . . ."

At all relevant times, the defendant has been the president and sole shareholder of Performance Plumbing & Heating, LLC (Performance), a subchapter S corporation based in Connecticut.[2] At the time of the marital dissolution, the defendant filed a financial affidavit

---

[2] A subchapter S corporation is a closely held business entity organized under the law of the state in which it is incorporated. One feature of such an entity is that it does not pay income taxes on its net earnings; rather, its income is attributed to its shareholders and must be reported by them to the taxing authorities as income to them, regardless of whether the income, in part or entirely, is actually distributed to the corporation's shareholders. See 26 U.S.C § 1361 et seq. (2018); *Birkhold* v. *Birkhold*, 343 Conn. 786, 804 n.8, 276 A.3d 414 (2022). Each year, an S corporation provides a Schedule K-1 form to its shareholders that indicates the net income attributed to that shareholder. See *Bishop* v. *Freitas*, 90 Conn. App. 517, 522 n.3, 877 A.2d 922, cert. denied, 275 Conn. 931, 883 A.2d 1241 (2005). The defendant's expert witness, Lawrence Hallisey, a certified public accountant who has worked for the defendant and Performance, and the plaintiff's expert witness, James Nowell, also a certified public accountant, testified at trial. Hallisey explained that, if any of the corporation's net income is not actually paid to its shareholders, the corporation retains that income and it is characterized as retained earnings, which, generally, are then available to provide liquidity to the corporation as needed for its operations. Moreover, both

in which he stated that he earned, as gross income, $15,279 per week from self-employment with Performance. After deductions for federal and state taxes, Social Security and Medicare, he claimed a weekly net income of $8508. As to Performance, while he indicated that he owned 100 percent of the company, he posited on his 2018 financial affidavit that its value was "unknown."

The record reveals that, following the dissolution of the parties' marriage, and despite their comprehensive separation agreement, the parties filed a steady stream of motions in which each charged the other with various violations of the marital dissolution judgment. Of note, in the early summer of 2021, the plaintiff sought permission from the court to relocate with the children to South Carolina and the matter was referred to the Judicial Branch's Family Services Office to conduct a comprehensive evaluation. The defendant, in turn, filed an objection and, when he learned that the move was imminent, he sought and obtained an ex parte order forbidding the removal of the minor children from Connecticut, but the order was subsequently vacated, as the plaintiff had already moved to South Carolina even though Family Services had not completed its assigned task. Subsequently, the parties entered into an agreement that the plaintiff and the children could remain in South Carolina, with the defendant's parenting time adjusted to reflect the new reality that the children had already begun school in South Carolina and were settling into their new home and environment.

Notwithstanding this agreement, the flood of postjudgment motions continued unabated. Thereafter, the

Hallisey and Nowell agreed that if a shareholder takes a distribution from retained earnings in any year after the earnings were realized by the corporation and taxed to its shareholders, those subsequent distributions are not considered income for tax purposes, as the distributed amount has already been subject to taxation in the year earned.

court scheduled an omnibus remote hearing to decide the motions then pending. That hearing took place over three days in 2023—January 25 and April 12 and 27—during which time the court considered the following motions: the defendant's motion to modify alimony and child support dated December 6, 2021; the defendant's motion for an order pertaining to educational support dated March 24, 2022; the defendant's motion for contempt dated March 24, 2022, alleging, in relevant part, that the plaintiff "[i]nvolves the minor children in adult issues in violation of article 6.1 (c) of the [agreement]," and requesting that she be found in contempt and "punished therefor"[3]; and, finally, the plaintiff's motions for contempt and for counsel fees dated February 23, 2022, and her motion for modification of alimony and child support dated July 21, 2022. On June 16, 2023, the court issued a written decision in which it partially granted the defendant's motion to modify alimony and child support on the basis that one of the children, Joseph, was shortly going to reach his eighteenth birthday. Accordingly, the court modified the child support order, which the court equated to $1040 per month per child, to $5210 per month.[4] The court denied the balance of

---

[3] The defendant's motion for contempt also alleged that the plaintiff had failed to pay her share of the children's unreimbursed health expenses, refused to pay her portion of higher education expenses, refused to provide the defendant with information about "the children's school and surgery," refused to ensure telephone contact with the children, attempted to alienate the children from him, and failed to send the children to him for winter parenting time. These claims are not included in the issues the defendant has raised on appeal.

[4] Immediately following the court's June 16, 2023 decision, the defendant filed a pre-appeal "motion for rectification" in the trial court, which pointed out that one of the bases for his motion for modification of alimony and child support was that the parties' daughter, Alexa, had become eighteen years old in September, 2020. He requested, therefore, a further reduction in the order of support to reflect Alexa's attainment of the age of majority and that the order be made retroactive to December 7, 2021, the date on which he filed his motion for modification of alimony and child support. Additionally, he alleged in this motion that he had overpaid support by more than $18,000 and he sought an order permitting him to further decrease his

the motion to modify alimony and child support upon finding that the defendant had failed to prove that there had been a substantial change in his financial circumstances. The court granted the defendant's motion for contempt on the basis of its finding that the plaintiff wilfully failed to prevent the minor children from inappropriate exposure to "disputes as between the parents existing in the past, present or future, specifically including financial matters" in violation of the dissolution judgment. The court did not, however, issue punitive sanctions against the plaintiff for doing so. The court denied the balance of the motions filed by the parties. This appeal followed.[5]

We begin our analysis by setting forth the standard that governs our review. "[T]he standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when

support payments by $1040 per month until the entirety of the overpayment could be recouped by him. By order dated June 26, 2023, the court granted the defendant's motion for rectification on the papers.

[5] The plaintiff did not appeal from the court's denial of the motions she filed or from the court's orders regarding the reduction of child support or its order permitting the defendant to recoup overpayments he made after Alexa's eighteenth birthday. See footnote 4 of this opinion. Indeed, the plaintiff has not participated in any way in this appeal. Because she did not file a brief in this court, she was not permitted to present oral argument. See Practice Book § 70-4 ("[n]o argument shall be allowed by any party who has not filed a brief").

although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Our deferential standard of review, however, does not extend to the court's interpretation of and application of the law to the facts. It is axiomatic that a matter of law is entitled to plenary review on appeal." (Internal quotation marks omitted.) *Coleman* v. *Bembridge*, 207 Conn. App. 28, 33–34, 263 A.3d 403 (2021). "As has often been explained, the foundation for [our deferential] standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . ." (Internal quotation marks omitted.) *Buxenbaum* v. *Jones*, 189 Conn. App. 790, 794, 209 A.3d 664 (2019).

I

We turn first to the defendant's claim that the court improperly considered distributions he took from Performance's retained earnings as present income when it denied his motion to modify his alimony and child support obligations because the amounts distributed were earned and taxed in previous years. We are not persuaded.

The following legal principles inform our analysis. "[General Statutes §] 46b-86 governs the modification or termination of an alimony or support order after the date of a dissolution judgment. When, as in this case, the disputed issue is alimony [or child support], the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony [or child support] may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . Under that statutory provision, the party seeking the modification bears the burden of demonstrating that such a change has occurred. . . . To

obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. . . . A finding of a substantial change in circumstances is subject to the clearly erroneous standard of review." (Citation omitted; internal quotation marks omitted.) *De Almeida-Kennedy* v. *Kennedy*, 224 Conn. App. 19, 30–31, 312 A.3d 150 (2024). "Whether money should be characterized as income . . . is a question of fact for the trial court." *Keller* v. *Keller*, 167 Conn. App. 138, 152, 142 A.3d 1197, cert. denied, 323 Conn. 922, 150 A.3d 1151 (2016).

In concluding that there had not been a substantial change in the defendant's finances since the marital dissolution, the court noted: "As recently as 2022 the [defendant] collected against his accountant's advice between his salary and draw gross earnings/income [from Performance] a total of $710,000. Comparatively, in 2018, the [defendant's] salary and draws totaled $718,207. Although the [defendant's] company is nowhere near as healthy as it was in 2018, his own earnings have nonetheless, other than 2021, remained the same. As such, this court does not presently find a substantial change in his individual financial circumstances to warrant a modification of alimony." Indeed, our review of the record supports the court's conclusion that the amounts reported as income by the defendant in 2018 and the flow of funds to him in 2022 are not meaningfully different.

It is the nature of those funds that presents the issue for our determination. The defendant argues that the court's characterization of his draws as income in both 2018 and 2022 is erroneous because the components

of each are significantly different. The record reflects that the 2018 financial affidavit filed by the defendant in conjunction with the marital dissolution reflected his then current income because it identified the net income of the S corporation for that calendar year as well as a salary Performance paid to him. Exhibits introduced during the hearing reveal that the federal Form 1120S filed by Performance for the calendar year 2018 stated that $145,100 was paid to the defendant as compensation. Additionally, the company reported ordinary net business income of $573,107. The aggregate of those two figures is $718,207. In accordance with the pertinent provisions of the Internal Revenue Code, the defendant was required to report that total amount as personal income on his Form 1040 for the 2018 tax year. See *Tuckman* v. *Tuckman*, 308 Conn. 194, 209, 61 A.3d 449 (2013) (explaining that in S corporation, "all of its capital gains and losses, for federal income tax purposes, pass through . . . to the individual shareholders, and any federal income tax liability on capital gains is the responsibility of the individual shareholder"). Indeed, the defendant's 2018 financial affidavit reflected the income reported on the corporation's tax filing for the same time period.[6]

In concluding that the defendant's receipt of salary and distributions from the corporation between 2018 and 2022 was all income for purposes of assessing whether there had been a substantial change in the defendant's financial circumstances, the court expressly relied on our Supreme Court's opinion in *Birkhold* v. *Birkhold*, 343 Conn. 786, 276 A.3d 414 (2022), in which the court stated: "We agree with the trial court's conclusion that the clear and unambiguous definition of gross

---

[6] At the hearing on this matter, Hallisey explained that the relatively small difference between the amounts shown on the defendant's 2018 financial affidavit for total income and the amounts shown on the corporation's tax return for income paid to the defendant were due to depreciation, meals, travel, and rental income received by the defendant.

annual base income from employment included income from self-employment or as an independent contractor. The definition of gross annual base income from employment *provided by the separation agreement* 'is expressly stated to be without limitation' and includes income 'actually received' by the plaintiff from employment as 'compensation for or by reason of past, present or future employment, in whatever form received,' and from 'any and all sources derived.' " (Emphasis added.) Id., 796. *Birkhold*, however, though otherwise instructive, involved a separation agreement in which the term "income" was amplified by a definition of " 'gross annual base income from employment' "; id., 791; whereas the parties' agreement in this case offers no such definitional assistance. Accordingly, we note that, unlike those circumstances, the court's task in the matter at hand was not to interpret the language used by parties to a separation agreement but rather to determine the meaning of the term "income," from its general usage and as applied in the marital dissolution context. We therefore look to the general definition of income in the marital dissolution context as an aid to our consideration of whether the court's finding that the draws taken by the defendant were income for purposes of its analysis was clearly erroneous.

At the outset, we note that our Supreme Court has instructed us that in dissolution of marriage proceedings, the concept of income is defined "broadly so as to include in income items that increase the amount of resources available for support purposes." *Unkelbach* v. *McNary*, 244 Conn. 350, 360, 710 A.2d 717 (1998). "Adopting a flexible definition of income, the court has explained, ensures that each spouse fulfills his or her continuing duty to support one another and each receives his or her equitable share of the marital assets." *Bartel* v. *Bartel*, 98 Conn. App. 706, 712, 911 A.2d 1134 (2006), citing *McPhee* v. *McPhee*, 186 Conn. 167, 170,

440 A.2d 274 (1982). Indeed, "even gifts, if received regularly and consistently, 'whether in the form of contributions to expenses or otherwise, are properly considered in determining alimony awards to the extent that they increase the amount of income available for support purposes.' [*Unkelbach* v. *McNary*, supra], 360–61.

"For example, Black's Law Dictionary defines 'income' as '[t]he money or other form of payment that one receives, usu[ally] periodically, from employment, business, investments, royalties, gifts, and the like.' Black's Law Dictionary (11th Ed. 2019) p. 912. Another dictionary defines 'income' as 'something that comes in as an increment or addition usu[ally] by chance . . . a gain or recurrent benefit that is usu[ally] measured in money and for a given period of time, derives from capital, labor, or a combination of both, includes gains from transactions in capital assets, but excludes unrealized advances in value: commercial revenue or receipts of any kind except receipts or returns of capital . . . .' Webster's Third New International Dictionary (2002) p. 1143; see also *Gay* v. *Gay*, 70 Conn. App. 772, 778, 800 A.2d 1231 (2002) (quoting definition in Webster's Third New International Dictionary to determine meaning of 'income,' as used in General Statutes § 46b-82), aff'd, 266 Conn. 641, 835 A.2d 1 (2003)." *Birkhold* v. *Birkhold*, supra, 343 Conn. 796–97.

Applying this reasoning and defining "income" broadly, as we must, in accordance with these definitions, we are convinced that the court correctly characterized the distributions the defendant received from retained earnings realized by the corporation in prior years as income to him for purposes of assessing his alimony and child support obligation.[7] Indeed, the plaintiff's expert,

---

[7] We recognize the anomaly in our conclusion that, if the defendant had not taken distributions from past years' retained earnings but, instead, had moved to modify alimony and support on the basis that the corporation could not afford to distribute its retained earnings to him while its net

Nowell, testified that the distributions constituted "cash flow to [the defendant] personally." In other words, "they increase[d] the amount of income available for support purposes"; (internal quotation marks omitted) *Birkhold* v. *Birkhold*, supra, 343 Conn. 796; which buttresses the court's finding of no substantial change in the defendant's financial circumstances. We conclude, therefore, that the court's finding that the "draws taken by the [defendant]" constituted income for purposes of setting his alimony and child support obligations was not clearly erroneous and that the court correctly determined that there had been no substantial change in circumstances to warrant a modification.

## II

We turn next to the defendant's claim that the court improperly failed to impose sanctions on the plaintiff for her contemptuous behavior. We review this claim pursuant to the abuse of discretion standard. See *Edmond* v. *Foisey*, 111 Conn. App. 760, 773–74, 961 A.2d 441 (2008). In doing so, we observe that "[c]ourts have in general the power to fashion a remedy appropriate to the vindication of a prior . . . judgment. . . . Having found noncompliance, the court, in the exercise of its equitable powers, necessarily ha[s] the authority to fashion whatever orders [are] required to protect the integrity of [its original] judgment. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Citation omitted; internal quotation marks omitted.) *Scott* v. *Scott*, 215 Conn. App. 24, 51, 282 A.3d 470 (2022).

earnings were faltering, the question before the court would have been the reasonableness of the defendant's choice in light of the corporation's need to retain its earnings for its business purposes. Here, however, this inquiry was not possible because the defendant did, in fact, take distributions during a period of lesser net earnings by the corporation and increased his own "cash flow" by doing so. See, e.g., *Tuckman* v. *Tuckman*, supra, 308 Conn. 208–14.

In its memorandum of decision, although the court denied that portion of the defendant's motion for contempt that dealt with financial matters, the court did find the plaintiff in contempt for inappropriately involving two of the parties' children in their parents' disagreements. The court stated: "Of most concern to this court is the evidence of the minor children Abigail's and Zach's awareness of what is occurring pertaining to the financial issues being addressed by this court. The first sentence of article 6.1 (c) indicates that neither parent will engage in any conversation with the minor children concerning the other parent as to any disputes as between the parents existing in the past, present or future, specifically including financial matters. The text communications indicate that Abigail and Zach are unfortunately aware of the financial matters, and this court has no reason to believe that the [defendant] would be proffering information of his intent to reduce alimony or child support. The order in the original dissolution is clear and exhaustive in its terms in the prevention of said exposure occurring, and the [plaintiff] was aware of said order. Nevertheless, these two children are again in the middle of their parents' dysfunctional relationship. The court finds that [the failure to prevent] said inappropriate exposure was wilful on behalf of the [plaintiff] and finds her in contempt of said order.

"[It is] grossly apparent that neither of the parties is capable or mature enough to have healthy communications with the other whether it pertains to finances, the children's needs, or attempts to co-parent with each other. Each party presents as more interested in making the life of the other more difficult, and accomplishing individual objectives on their own individual terms, than prioritizing the needs of the children. As such, this court orders that the parties reestablish the platform AppClose for all communications between them.[8] Said

---

[8] We take judicial notice that AppClose is a co-parenting software program designed for a mobile device that is, at times, recommended by the court to parents who have shared custody of their children.

app shall be utilized to include, but not be limited to, submission of unreimbursed medical expenses, notification of payments addressing the same, visitation with the children either by the [plaintiff] in Connecticut or the [defendant] in South Carolina, as well as notable school and health related events." (Footnote added.)

Although the court's response to the plaintiff's contemptuous behavior may not have been punitive and directed solely to the plaintiff as desired by the defendant, it appears to this court on review to have been intended as remedial and to lessen the burden on the children of being involved in the parties' ongoing and dysfunctional manner of dealing with each other. The court's child-centered remedial response was well within the scope of its discretionary authority. See *Scott* v. *Scott*, supra, 215 Conn. App. 51. In sum, we do not find that the court abused its discretion in formulating this response to the plaintiff's contemptuous behavior.

The judgment is affirmed.

In this opinion the other judges concurred.